1

2

3

4

5

6                                   IN THE UNITED STATES DISTRICT COURT

7                              FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10    HELLER EHRMAN LLP,                        Nos.   C 14-01236 CRB
                                                       C 14-01237 CRB
                     Plaintiff,                        C 14-01238 CRB
11                                                     C 14-01239 CRB
12        v.                                    **ORDER RE SUMMARY JUDGMENT**

13    DAVIS, WRIGHT, TREMAINE, LLP,

                     Defendant.
14    _____

15    HELLER EHRMAN LLP,

                     Plaintiff,
16
          v.
17
      JONES DAY,
18
                     Defendant.
      _____
19
      HELLER EHRMAN LLP,
20
                     Plaintiff,
21
          v.
22    FOLEY & LARTNER LLP,

                     Defendant.
23    _____

24    HELLER EHRMAN LLP,

                     Plaintiff,
25
          v.
26    ORRICK, HERRINGTON & SUTCLIFFE
      LLP,
27
                     Defendant.
28    _____/

**United States District Court**
For the Northern District of California

1   **I.      INTRODUCTION**

2           A law firm—and its attorneys—do not own the matters on which they perform their

3   legal services.  Their clients do.  A client, for whatever reason, may summarily discharge

4   counsel and hire someone else.  At that point, the client owes fees only for services

5   performed to the date of discharge, and his former lawyer must, even if fees are in dispute,

6   cease working on the matter and immediately cooperate in the transfer of files to new

7   counsel.

8           It is in this context that the Court is asked to address a question of first impression:

9   namely, whether a law firm—which has been dissolved by virtue of creditors terminating

10  their financial support, thus rendering it impossible to continue to provide legal services in

11  ongoing matters—is entitled to assert a property interest in hourly fee matters pending at the

12  time of its dissolution.

13          This issue was presented to the Bankruptcy Court, which this Court reviews de novo.

14  See Executive Benefits Insurance Agency v. Arkinson, No. 12-1200 Slip op. at 1 (U.S. June

15  9, 2014) citing Stern v. Marshall, 131 S. Ct. 2594 (2011).  In doing so, the Court concludes

16  that under the facts presented here, neither law, equity, nor policy recognizes a law firm's

17  property interest in hourly fee matters.[1]  First, as to the law, the Court finds that Jewel v.

18  Boxer, 156 Cal. App. 3d 171 (1984), an intermediate state appellate court decision, is not

19  controlling under these facts and that no California Supreme Court decision supports such a

20  result.[2]  Second, the equities clearly favor the Defendants (third-party law firms which earned

21  the compensation paid to them) over Heller (which received full payment for its services).

22  And finally, considering the policies favoring the primacy of the rights of clients over those

23  of lawyers, it is essential to provide a market for legal services that is unencumbered by

24

25          [1] Nothing in this Order is intended to address the fiduciary duties of law partners to one
26  another–they are not the parties who have been sued.  Nor does this Order address matters which Heller
    Ehrman LLP was handling on a contingency basis.

27          [2] Only one California Supreme Court case cites Jewel.  See Howard v. Babcock, 6 Cal. 4th 409,
28  424 n.8 (1993) (citing Jewel in a string cite in a footnote for a proposition which is not material to this
    case).  Howard was decided before the Revised Uniform Partnership Act ("RUPA") took effect in 1999.
    See Cal. Corp. Code § 16111(b).

United States District Court
For the Northern District of California

quarrelsome claims of disgruntled attorneys and their creditors.  While this Court distinguishes <u>Jewel v. Boxer</u> on its facts, it is also of the opinion that the California Supreme Court would likely hold that hourly fee matters are not partnership property and therefore are not "unfinished business" subject to any duty to account.[3]

Now before the Court are cross motions for summary judgment in a long-running bankruptcy dispute.  These four actions arise from the bankruptcy of a large law firm: Heller Ehrman LLP.  Heller's bankruptcy estate claims the profits earned by the law firms that Heller's former clients retained to work on hourly fee matters.  Heller, because of its bankruptcy and dissolution, could no longer do that work.  The question these cases present is whether hourly fee matters pending when a law firm dissolves are the property of that firm. More specifically, these cases require the Court to consider whether Heller's bankruptcy Trustee has a claim against third-party law firms that hired former Heller lawyers, representing former Heller clients in hourly fee matters.  The answer to both questions is no.

Heller's bankruptcy Trustee ("Trustee") filed multiple adversary proceedings against various law firms, including Davis, Wright, Tremaine LLP; Orrick, Herrington & Sutcliffe LLP; Foley & Lardner LLP; and Jones Day ("Defendants") which Heller's former Shareholders joined.  Many of the initial lawsuits settled, but four defendant law firms challenged the Trustee's claims to their profits earned from former Heller clients.  For the reasons set forth below, the Court finds that the Trustee does not have a property interest in profits Defendants earned working on hourly fee matters which Heller had once handled, and therefore enters JUDGMENT in favor of Defendants and against the Trustee.

## II.    BACKGROUND

As to the questions of (1) whether hourly fee matters pending when a law firm dissolves are the property of that firm and (2) whether Heller's bankruptcy Trustee has a claim against third-party law firms representing Heller's former clients in hourly fee matters, the relevant facts are undisputed.

---

[3]  As Judge Pauley of the Southern District of New York noted, ". . . there is good reason to believe that the highest courts of New York and California would decline to follow [<u>Jewel</u>]."  <u>Geron v. Robinson & Cole LLP</u>, 476 B.R. 732, 745 (S.D.N.Y. 2012).

United States District Court
For the Northern District of California

Heller was a global law firm with approximately 700 lawyers until its dissolution in 2008. Heller was structured as a limited liability corporation composed of eight partners, all of which were professional corporations (the "Heller PCs"). The shareholders of the Heller PCs (the "Shareholders") provided legal services to Heller's clients. Heller relied on a $35 million revolving line of credit from Bank of America to finance its operations. In September 2008, Bank of America declared Heller to be in default and seized control of the firm's bank accounts. Unable to continue their business, the Heller PCs voted to dissolve the firm in accordance with a dissolution plan written by a group of Shareholders. The dissolution plan included a "Jewel Waiver" which purported to waive any rights and claims under the doctrine of <u>Jewel v. Boxer</u> to seek payment of legal fees generated after the departure date of any lawyer or group of lawyers with respect to non-contingency/nonsuccess fee matters only. Heller notified its clients that as of October 31, 2008, it would no longer be able to provide legal services. Heller filed its Chapter 11 bankruptcy case in December 2008.[4]

The Trustee's adversary proceedings against Defendants and other law firms allege that Heller's estate is entitled to recover profits associated with pending hourly matters because the "Jewel Waiver" was a constructively fraudulent transfer or an actual fraudulent transfer of Heller's property under the Bankruptcy Code or under the California Uniform Fraudulent Transfer Act. 11 U.S.C. § 548; Cal. Civ. Code § 3439 et seq. The Trustee has not sued the individual Shareholders. <u>In re Heller Ehrman LLP</u>, 2013 WL 951706 at *1-2 (Bankr. N.D. Cal. Mar. 11, 2013).

At the hearings in Bankruptcy Court, the Trustee made several significant concessions which the Bankruptcy Court described in detail:

> At both hearings on the MSJs, [the Trustee's] counsel conceded that if a Shareholder had left Heller prior to the dissolution and had taken unfinished business, Heller could not pursue recovery of profits earned by that Shareholder following his or her departure, absent some breach of fiduciary duty. In particular, at the hearing on October 15, the [bankruptcy] court asked [the Trustee's] counsel whether a partner who took a big case would have to account for it. [The Trustee's] counsel stated the duty to account arose upon

---

[4] The parties acknowledged at the June 5, 2014, motion hearing that these facts are not in dispute.

**United States District Court**
For the Northern District of California

dissolution, but not before, unless the departing attorney breached a fiduciary duty to the firm:

THE COURT: How about if there wasn't a dissolution?

MR. SULLIVAN: If he breached his fiduciary duty.

THE COURT: How about if he just walked out the door and stole the client, took the client with him?  You know, the documents, the way I interpret it, said, as I stated earlier this afternoon, the client is a client of the firm.

. . . .

THE COURT: So if Mr. X or Ms. Y leaves and nobody cares, that's fine.  But if somebody goes out the door with a big fat case, did Heller or didn't it have the right to pursue that attorney predissolution?

MR. SULLIVAN: Not in the absence of a breach of fiduciary duty.

THE COURT: But was that itself a breach of duty?

MR. SULLIVAN: No

While [the Trustee's] counsel was not as direct on this issue at the November hearing, he did not deny that a Shareholder who left Heller prior to the dissolution, in the absence of a breach of duty, would not have to account for unfinished business taken to another firm.  Moreover, he acknowledged and did not dispute Defendants' allegation that prior to its dissolution, Heller had never sued a former Shareholder under a <u>Jewel</u> theory to recover the profits earned on such unfinished business.  Thus, only as a result of Heller's dissolution were departing Shareholders burdened with a duty to account for unfinished business taken from the firm.  The Jewel Waiver purported to eliminate that duty to account, freeing the Shareholders to keep profits earned on unfinished business.

Finally, <u>counsel for [the Trustee] also acknowledged that a law firm that took unfinished business from Heller without a Shareholder concurrently joining it would have no exposure under [the Trustee's] fraudulent transfer theories.</u>

<u>Id.</u> at *3-4 (emphasis added) (citations omitted).

The only Defendants in these cases are the third-party law firms that provided services to Heller's former clients under new fee agreements once Heller dissolved.  The Trustee seeks to recover a portion of the fees paid to these third parties.

United States District Court
For the Northern District of California

### III.   LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  The burden is on the moving party to demonstrate that there is no genuine dispute with respect to any material fact and that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Anderson, 477 U.S. at 255.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  It is agreed that this Court must apply California law in its analysis of whether the bankruptcy estate held a property interest in the pending hourly matters at the time of the dissolution.  See generally Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  If Heller had no property interest in Defendants' fees, then summary judgment must be granted in favor of the Defendants.

### IV.   DISCUSSION

#### A.   Law

The Trustee asserts that under California law as set forth in Jewel v. Boxer, the estate has a property interest in pending hourly matters.  In Jewel, the California Court of Appeal considered the voluntary dissolution of a four-person firm after its partners split into groups of two and formed new firms.  156 Cal. App. 3d at 174-75.  "[E]ach former partner sent a letter to each client whose case he had handled for the old firm, announcing the dissolution."  Id. at 175.  The letter included "a substitution of attorney form, which was executed and returned by each client retaining the attorney who had handled the case for the old firm."  Id.  Significantly, "[t]he new firms represented the clients under fee agreements entered into

United States District Court
For the Northern District of California

between the client and the old firm." Id. (emphasis added).  The court held that, under those facts, the former partners violated their "fiduciary duty not to take any action with respect to unfinished partnership business for personal gain."  Id. at 178-79.  In essence, the court found that the new firms had earned profits which, in equity, belonged to the dissolving partnership because the departing partners had appropriated work for themselves that could have been performed on behalf of the dissolved firm.

Jewel is different from the cases here for five key, related reasons.  First, the dissolution of the firm at issue in Jewel was voluntary, while Heller's dissolution was forced when Bank of America withdrew the firm's line of credit.  This is significant because the partners in Jewel could have, but chose not to, finish representing their clients as or on behalf of the old firm.  Here, Heller lacked the financial ability to continue providing legal services to its clients, leaving clients with ongoing matters no choice but to seek new counsel and Heller Shareholders no choice but to seek new employment.  Second, in Jewel, "[t]he new firms represented the clients under fee agreements entered into between the client and the old firm."  Id. at 175.  Here, the clients signed new retainer agreements with the new firms.  Third, in Jewel, the new firms consisted entirely of partners from the old firms: one firm with four partners had become two firms with two partners each.  Here, Defendants are pre-existing third-party firms that provided substantively new representation, requiring significant resources, personnel, capital, and services well beyond the capacity of either Heller or its individual Shareholders.  Where in Jewel, the departed partners continued to have fiduciary duties to each other and the old firm, here, the third-party firms never owed any duty, fiduciary or otherwise, to the dissolved firm.  Fourth, Jewel treated hourly fee matters and contingency fee matters as indistinguishable.  Here, there are no contingency fee cases at issue.  Finally, Jewel was decided in 1984 and thus applied the Uniform Partnership Act (the "UPA") which the materially different Revised Uniform Partnership Act (the "RUPA") has since superseded.  The RUPA, which applies after 1999 to all California partnerships, allows partners to obtain "reasonable compensation" for helping to wind up

United States District Court
For the Northern District of California

1  partnership business, Cal. Corp. Code § 16401(h), and thus undermines the legal foundation

2  on which Jewel rests.

3          The RUPA's impact on Jewel is significant.  Section 404(b)(3) of the RUPA provides

4  that a partner must "refrain from competing with the partnership in the conduct of the

5  partnership business before the dissolution of the partnership."  Cal. Corp. Code

6  § 16404(b)(3).  As the drafters of the RUPA explained, this language means that "[t]he duty

7  not to compete . . . does not extend to winding up the business, as do the other loyalty rules.

8  Thus, a partner is free to compete immediately upon an event of dissolution . . . ."  RUPA

9  § 404 cmt. 2.  Therefore, unlike in Jewel, if a former Heller Shareholder signed a new

10  retainer agreement with a former Heller client, this would not violate the "fiduciary duty not

11  to take any action with respect to unfinished partnership business for personal gain."  Jewel,

12  156 Cal. App. 3d at 178-79.  Consequently there is no provision of the RUPA that gives the

13  dissolved firm the right to demand an accounting for profits earned by its former partner

14  under a new retainer agreement with a client.  Moreover, here, the new retainer agreements

15  were not even signed between former Heller clients and former Heller Shareholders but

16  rather between the clients and new, third-party firms.

17          Although Jewel has been cited in dozens of cases from California and beyond, "courts

18  have cited Jewel reflexively and uncritically," that is, without much analysis or consideration

19  of the changes in law firm practice or law.  Geron, 476 B.R. at 739 n.2.  The California

20  Supreme Court has not ruled on the issue now before the Court, nor do any published

21  California cases decided under the RUPA cite Jewel for its unfinished business rule.  Thus,

22  California law is unsettled on the question of whether a law firm may assert a property

23  interest in hourly fee matters pending at the time of its dissolution.  Absent clear authority

24  from California courts, the Court next turns to the equities.[5]

25

26

27          [5] Because Jewel does not apply, the Court need not reach the issue of whether the "Jewel

28  Waiver" at issue here was valid or constituted a fraudulent transfer.  Nor does the Court reach the issue of whether Heller was unable to pay its bills as they became due and was thus insolvent at the time of the "Jewel Waiver."

United States District Court
For the Northern District of California

### B.  Equity

A bedrock of the commercial legal profession is that lawyers expect to be paid for services they provide to their clients, and clients expect to pay the firm that employs the lawyers who provide their services.  Balancing the equities, it is simple enough to conclude that the firms that did the work should keep the fees.[6]  And, of course, the fees that Heller earned through its labor prior to dissolution have been paid or are not at issue here.  The fees at issue here were generated by Defendants' labor, not Heller's.  So in terms of fairness, the Trustee cannot argue that the Defendants have received a windfall–they did the work.

The Trustee argues instead that the former Heller Shareholders had a fiduciary duty to account to Heller's estate for profits their new firms earned from work on former Heller matters.  However, the fiduciary duty to account is limited to partnership property.  Cal. Corp. Code § 16404(b)(1).  If the profits Defendants earned are not derived from Heller partnership property, then there is no duty to account.  A few basic principals demonstrate why the equities do not favor finding a property interest here.

A law firm never owns its client matters.  The client always owns the matter, and the most the law firm can be said to have is an expectation of future business.  At the motion hearing the Trustee was unable to articulate a basis for calculating the value of this expected future business.  The Trustee suggested that the value at issue here is "good will," which does not ordinarily appear on law firm balance sheets which are on a modified cash basis.  In California, and beyond, professional law partnerships do not have a "good will" asset.  See Lyon v. Lyon, 246 Cal. App. 2d 519, 526 (1966).[7]  "The 'good will' which plaintiff claims—

---

[6] At the motion hearing, the Trustee was right to emphasize that equitable considerations also weigh in favor of Heller's creditors, many of whom are former Heller Shareholders and employees. Heller's dissolution and its outstanding debt to its dedicated Shareholders and employees is lamentable. However, it does not, in and of itself, justify taking away from Defendants that which they earned through their labor and investment absent a clear direction from the California Supreme Court that this is a property interest, the recognition of which would further advance the public policy goals of bankruptcy law.

[7] State supreme courts from Wyoming and Iowa have favorably cited Lyon for this proposition. See Smith, Keller & Assocs. v. Dorr & Assocs., 875 P.2d 1258, 1265 n.5 (Wyo. 1994); Bump v. Stewart, Wimer & Bump, P.C., 336 N.W.2d 731, 736 (Iowa 1983).  For example, "[t]he accepted rule has recognized that professional partnerships do not have a goodwill asset.  This rule is consistent with the position that a client's files belong to the client, and the professional partnership may not withhold

United States District Court
For the Northern District of California

the expectation of future business—is personal and confidential and attaches to the individual partners of the firm, thus, no monetary value can be attributed to it and there is nothing to sell." Id. The good will the Trustee discussed may be real in one sense: certainly a firm's reputation is a crucial part of its ability to obtain work. However, good will is not an asset to which a property interest attaches. Moreover, Heller's bankruptcy did much to undermine the firm's otherwise stellar reputation and to eviscerate any reasonable expectation of future business.

Obviously, the expectation of future business—if it is "good will"—would disappear as soon as either (1) the client removes business, which it can do at will, or (2) the law firm ceases to be able to perform the work to generate those expected future profits. "It has long been recognized in [California] that the client's power to discharge an attorney, with or without cause, is absolute." Fracasse v. Brent, 6 Cal. 3d 784, 790 (1972). When a client exercises "the unilateral right to discharge his or her attorney," the party discharged "only has a right to quantum meruit recovery" for the value of work already done on the matter. Jalali v. Root, 109 Cal. App. 4th 1768, 1777 (2003). Here, the client matters at issue ceased to be Heller's partnership business and became the Defendants' partnership business when the clients terminated Heller and retained new, third-party counsel.

The Trustee conceded as much before the Bankruptcy Court. As the Bankruptcy Court explained, the Trustee "did not deny that a Shareholder who left Heller prior to the dissolution, in the absence of a breach of duty, would not have to account for unfinished business taken to another firm." In re Heller Ehrman LLP, 2013 WL 951706, at *4. The Trustee further "acknowledged and did not dispute Defendants' allegation that prior to its dissolution, Heller had never sued a former Shareholder under a Jewel theory to recover the profits earned on such unfinished business." Id. Thus, according to the Trustee, "only as a result of Heller's dissolution were departing Shareholders burdened with a duty to account for unfinished business taken from the firm." Id.

---

the files to restrict the client's access to other providers." Smith, Keller & Assocs., 875 P.2d at 1265 n.5 (emphasis in original) (internal citations omitted).

**United States District Court**
For the Northern District of California

1    It is unclear why the duties, rights, and property interests at stake here should be
2  different simply because Heller dissolved.  To the extent dissolution does change the lay of
3  the land, it should do so in favor of Defendants as a matter of equity.  Heller ceased to be able
4  to represent its clients, leaving them with no choice but to seek representation elsewhere.
5  Defendants came to the rescue of these clients and provided them with legal services on
6  ongoing matters.  The former Heller clients negotiated and signed entirely new retainer
7  agreements with third-party firms.  And those firms provided substantively new
8  representation, requiring significant resources, personnel, capital, and services well beyond
9  the capacity of either Heller or its individual Shareholders.

10    The plight of Heller's former staff and creditors is, as in all bankruptcies, deplorable.
11  However, Defendants did the work that generated the fees at issue here.  With the Defendants
12  those fees should stay.  The equities favor Defendants.

13    **C.    Policy**

14    Public policy considerations also support the Court's ruling.  The Trustee argued at the
15  motion hearing that the two policy reasons articulated by <u>Jewel</u> apply here.  First, <u>Jewel</u>
16  explained that preventing extra compensation to law partnerships "prevents partners from
17  competing for the most remunerative cases during the life of the partnership in anticipation
18  that they might retain those cases should the partnership dissolve."  <u>Jewel</u>, 156 Cal. App. 3d at
19  179.  Second, the <u>Jewel</u> holding "discourages former partners from scrambling to take
20  physical possession of files and seeking personal gain by soliciting a firm's existing clients
21  upon dissolution."  <u>Id.</u>  Based on the detailed discussion of these policy issues during the
22  motion hearing, the Court concludes that they are not at play here.

23    The profits to which the Trustee asserts a claim are not those of the former Heller
24  Shareholders themselves, but rather those of the new, third-party firms.  Thus, any benefit or
25  incentive for the former Heller Shareholders is not directly at issue.  Further, the former Heller
26  clients chose to sign new retainer agreements with third-party firms.  The decision to retain
27  new counsel was not instigated by "physical possession of files" but rather by Heller's
28  inability to provide further representation.  Nor could the Trustee provide the Court with a

**United States District Court**
For the Northern District of California

workable definition of "winding up" or "unfinished business."  The Court agrees that Heller

should bill and be paid for the time its lawyers spent filing motions for continuances, noticing

parties and courts that it was withdrawing as counsel, packing up and shipping client files

back to the clients or to new counsel, and getting new counsel up to speed on pending matters.

That is what winding up unfinished business entails when a firm dissolves in the context of a

bankruptcy.[8]  But the Trustee suggests that Heller's estate is entitled to a share of all profits

earned even on litigation lasting long after Heller ceased to function, into the indefinite future

perpetuating the inequity over time.  Legal matters have a way of dragging on,[9] even in this

century.  Public policy cannot favor such an outcome.

     Nor could the Trustee direct the Court to any concrete evidence that either of the two

policy factors articulated in <u>Jewel</u> came into play during Heller's dissolution.  That

Defendants, in hiring former Heller Shareholders, considered those Shareholders' book of

business is to be expected and hardly speaks to unruly competition within Heller.  In fact, the

Trustee's position would create a perverse incentive in the context of a firm struggling to

avoid dissolution.  The Trustee's rule would incentivize partners of a struggling firm to jump

ship at the first sign of trouble to avoid the kind of suit Defendants now find themselves in,

even if that would destabilize an otherwise viable firm.

     Moreover, the Trustee would have this Court prevent third-party firms from earning a

profit on hourly fee matters formerly handled by Heller simply because those firms hired

former Heller Shareholders.  Such a holding would discourage third-party firms from hiring

former partners of dissolved firms and discourage third-party firms from accepting new

clients formerly represented by dissolved firms.  It is not in the public interest to make it more

difficult for partners leaving a struggling firm to find new employment, or to limit the

---

[8] To the extent that the Trustee argues that "winding up" entails further substantive legal work on pending matters, the RUPA allows partners to obtain "reasonable compensation" for helping to wind up partnership business.  Cal. Corp. Code § 16401(h).  Authorizing wind-up compensation does not create a property interest.  It simply permits lawyers to continue to work on pending matters and be compensated.

[9] <u>See</u> Charles Dickens, <u>Bleak House</u> (1853) (describing the fictional legal case of <u>Jarndyce v. Jarndyce</u>, which dragged on for generations).

United States District Court
For the Northern District of California

1    representation choices a client has available, by establishing a rule that prevents third-party

2    firms from earning a profit off of labor and capital investment they make in a matter

3    previously handled by a dissolved firm.[10]  See In re Thelen LLP, 736 F.3d 213, 223 (2d Cir.

4    2013) ("the [unfinished business] doctrine may discourage other law firms from accepting

5    lawyers and client engagements from a dissolved law firm for fear that a substantial portion of

6    the resulting profits may be turned over to the dissolved law firm or its creditors.").  Law

7    firms accepting a new client, even for an hourly-fee matter, must be prepared to invest

8    considerable resources: attorney salaries; malpractice insurance; administrative support;

9    research fees; document preparation; space allocation; opportunity costs; and so on.  No firm

10   can be expected to contribute those resources if they are not entitled to retain the

11   corresponding profits.  Here, the Trustee asks this Court to deprive Defendants of profits

12   earned off of Defendants' labor and capital investment.  Public policy weighs strongly against

13   such an outcome.  See In re Thelen LLP, 736 F.3d at 222-23 (discussing policy arguments

14   against treating hourly fee matters as partnership property including (1) the nature of the

15   attorney-client relationship, (2) economic consequences and perverse incentives, (3) rules of

16   professional conduct,[11] and (4) distinctions between contingency and hourly fee matters).

## V.    CONCLUSION

18         Finding no justification, legal or otherwise, for creating a property interest in pending

19   hourly matters, the Court GRANTS summary judgment in favor of Defendants and against

20   Plaintiff.

21         **IT IS SO ORDERED.**

22   Dated: June 11, 2014                    _____

23                                           CHARLES  R. BREYER
                                             UNITED STATES DISTRICT JUDGE

24

---

25        [10] If, as here, clients would like to choose third-party firms with some familiarity with the matters
     by virtue of having hired former Heller Shareholders, the Trustee's argument is that those third-party
26   firms would not be able to earn a profit on their labor or investment.  Thus, the Trustee's position would
     all but force former Heller clients to retain new counsel with no connection to Heller or their matters.
27

28        [11] Defendants argue that the Trustee's position would lead to a fee sharing arrangement
     prohibited by Rule 1-320 of the California Rules of Professional Ethics.  The Court need not address
     this argument.

13